2020 IL App (1st) 200142

THIRD DIVISION
November 4, 2020

No. 1-20-0142

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| CAROL SULLIVAN, AIHONG YU, OLEG REGIRER, DINESH GHANDO, NICHOLAS BLACK, JAY HUANG, STEVEN J. ANDERSON, ALEX OSOVSKY, PETER TIEN, KISHAN PATEL, GITA THAKKAR, SOBIN KUNCHERIA, BRIAN KUNCHERIA, KEVIN KUNCHERIA, JOSEPH VU, and CECLIA VU, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | |
| v. | No. 19 CH 11017 |
| VILLAGE OF GLENVIEW, a Municipal Corporation, JIM PATTERSON, in his capacity as President of the Village of Glenview, VILLAGE OF GLENVIEW BOARD OF TRUSTEES, VILLAGE OF GLENVIEW PLAN COMMISSION, and VILLAGE OF GLENVIEW APPEARANCE COMMISSION, | Honorable Michael T. Mullen and Pamela McClean Meyerson, Judges Presiding |
| Defendants-Appellees. | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1　Plaintiffs, homeowners in the village of Glenview, Illinois, filed this action for declaratory judgment to invalidate a 1988 municipal ordinance that seemingly paved the way for the rezoning of property adjacent to their homes from residential to commercial. Plaintiffs filed

suit in 2019, after a commercial developer applied for permits to rezone and construct commercial buildings on that property, per that 1988 ordinance. The trial court dismissed the complaint as time-barred, based on a 90-day limitations provision in the Municipal Code that governs challenges to municipal zoning "decisions."

¶ 2     Because the 1988 ordinance was not, in our view, a "decision" to rezone, we find the limitations provision in the Municipal Code inapplicable. This suit is not time-barred. We reverse the trial court's judgment and remand for further proceedings with instructions.

¶ 3                                    BACKGROUND

¶ 4                                         I

¶ 5     As we find this matter at the pleading stage, we draw most of our underlying facts from the allegations of the complaint, which we accept as true. *Restore Construction Co., Inc. v. Board of Education of Proviso Township High School District 209*, 2020 IL 125133, ¶ 4. We judicially notice other information from public documents, such as municipal ordinances and file-stamped public documents. See *South Stickney Park District v. Village of Bedford Park*, 131 Ill. App. 3d 205, 209 (1985).

¶ 6     And we take background information, which involves real property located on the border of two suburban villages, Northbrook and Glenview, from a decision of this court that involved the efforts of both Northbrook and Glenview to annex the property at roughly the same time in 1988. See *People ex rel. Village of Northbrook v. Village of Glenview*, 194 Ill. App. 3d 560 (1989). (As the mere existence of this lawsuit would suggest, Glenview won the inter-village battle and annexed these properties, at least the ones relevant to our discussion. See *id*. at 568.)

¶ 7     The property in question is located at 2660 Pfingsten Road and is known as the "Hart property." The Hart property was included among other parcels of contiguous property, totaling

2

about 60 acres, that the village of Northbrook, Illinois sought to annex in early February 1988 with commencement of involuntary annexation proceedings. See *id*. at 562. But before Northbrook's annexation was formally concluded, the various owners of those parcels of disputed property filed petitions with the village of Glenview, Illinois, requesting that Glenview annex the property. *Id*. Undaunted, a few days later, on February 15, 1988, Northbrook's board of trustees adopted an ordinance annexing all the disputed property. *Id*. at 563.

¶ 8     Two weeks later, on March 1, 1988, Glenview did the same thing as Northbrook, as noted in our earlier opinion: "On March 1, Glenview adopted four annexation ordinances, including all of the disputed property." *Id*. Those properties were found at or near the intersection of Willow and Pfingsten Roads in Glenview. They included two different parcels with Willow addresses (Ordinances 2849 and 2850), the northwest corner of Willow and Pfingsten Roads (Ordinance 2851) and our subject property at 2660 Pfingsten Road, which we are calling the Hart property (Ordinance 2852).

¶ 9     A week after it annexed these four properties, on March 8, 1988 at 7:30 PM, Glenview's Plan Commission held a public hearing over the question of rezoning these four newly-annexed parcels of land. The week after that hearing, on March 15, 1988, the village of Glenview adopted four ordinances rezoning these parcels of property. Some were rezoned as a business district, some an amended from of residential district.

¶ 10     Relevant here is Ordinance 2856, which purported to rezone the Hart property from its current status of "R-1 Residential District" to "B-1 General Business District" primarily, with the southern boundary to be rezoned "R-4 Residential District."

¶ 11     The language in Ordinance 2856 will be discussed in more detail below, but for now, suffice it to mention two things. First, unlike the other three companion zoning ordinances

3

adopted on the same day, Ordinance 2856 provided several benefits and privileges to the existing landowners, the Hart family, including: the running of a water service line to the Hart property without charge; the continued use of well water on the Hart property; the use of existing driveways on the property; and permission to install a sewer system.

¶ 12     Second and more importantly, and also unlike the other three companion zoning ordinances adopted on the same day, Ordinance 2856's purported rezoning language *did not take effect immediately*. In other words, the day after Ordinance 2856 was adopted, the Hart property remained zoned as R-1 Residential District. And it remained that way for a good 31 years. At no time between March 15, 1988, and May 23, 2019 did the landowner file any permits or applications to rezone the Hart property or develop commercial construction, nor was Glenview's zoning map ever amended to reflect a zoning change to the Hart property.

¶ 13     Ordinance 2856's rezoning language expressly conditioned rezoning of the Hart property on future action by the landowner. What, exactly, that further landowner action entailed is the subject of dispute between the parties and is the ultimate basis for our resolution of this appeal.

¶ 14     On May 24, 2019, a real estate developer named GW Property Group filed an application for rezoning of the Hart property, along with an application for commercial development of that property. In the view of defendant, the village of Glenview (Village), this filing triggered the rezoning of the Hart property per Ordinance 2856.

¶ 15                                         II

¶ 16     Five months later, on September 24, 2019, plaintiffs, homeowners in Glenview who reside near the Hart property, filed this two-count suit for declaratory judgment. Count I alleged that Ordinance 2856 was void *ab initio*, because the Village did not provide proper, legal notice of the March 8, 1988 public meeting of the Plan Commission regarding the rezoning of the Hart

property. Count II alleged that Ordinance 2856 constituted unlawful "contract zoning" or "conditional zoning," portraying the ordinance as a "quid *pro quo*" between the Village and the Hart family, in that it provided the Harts a free water line and hook-up to the Village's sewer system in exchange for annexation of the Hart property.

¶ 17    In December 2019, the trial court dismissed the complaint as untimely. The court ruled that section 11-13-25 of the Municipal Code imposed a 90-day limitations period to challenge a municipal rezoning ordinance and barred this action. See 65 ILCS 5/11-13-25 (West 2018).

¶ 18    Though it is not in the complaint because it occurred after the dismissal of this action, we judicially notice that, on January 7, 2020, the village of Glenview adopted Ordinance 6325, approving GW Property Group's application for commercial construction on the Hart Property. See *South Stickney Park District*, 131 Ill. App. 3d at 209 (appellate court may judicially notice municipal ordinances, even those adopted while case is pending on appeal).

¶ 19                                    ANALYSIS

¶ 20                                        I

¶ 21    The court's dismissal was on limitations grounds under section 2-619(a)(5) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(5) (West 2018). The court ruled that a 90-day limitations provision in section 11-13-25 of the Municipal Code barred plaintiffs' challenge to Ordinance 2856. See 65 ILCS 5/11-13-25(a) (West 2018).

¶ 22    On review of that judgment, we take all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Restore Construction*, 2020 IL 125133, ¶ 4. Our review is *de novo*, both because we are reviewing the dismissal of a complaint and because we are deciding the purely legal question of a municipal ordinance's application to a statute. See *Raab v. Frank*, 2019 IL 124641, ¶ 18.

¶ 23    We construe statutes and municipal ordinances under the same principles. *Ruisard v. Village of Glen Ellyn*, 406 Ill. App. 3d 644, 661 (2010). We must "ascertain and give effect to the intent" of the legislative body. *Raab*, 2019 IL 124641, ¶ 18. We start with the plain language of the enactment, given its ordinary meaning. *Id.* If the statute or ordinance is unambiguous, the judicial inquiry ends; we apply the language as written. *Id.* If, however, we find ambiguity in the language, we may resort to extrinsic aids to determine legislative intent. *Id.*

¶ 24                                    A

¶ 25    We start with the Municipal Code's limitations provision on challenges to municipal zoning action. The current version of section 11-13-25, on which the Village relies, reads in relevant part as follows:

> "(a) *Any decision* by the corporate authorities of any municipality, home rule or non-home rule, *in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance* shall be subject to de novo judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. *Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.*" (Emphases added.) 65 ILCS 5/11-13-25(a) (West 2018).

¶ 26    The key word here is "decision." The Municipal Code provides no definition of "decision," so we look to its plain and ordinary meaning. *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 37. We often think of the word "decision" in the context of final administrative action. See, *e.g.*, *Merritt v. Department of State Police*, 2016 IL App (4th) 150661, ¶ 27 (interpreting 735 ILCS 5/3-101 (West 2014)). Here, it is used in the context of municipal *legislative* action, and we have routinely applied the provisions of section 11-13-25 to

the adoption of municipal zoning ordinances like Ordinance 2856. See, *e.g.*, *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 648 (2009).

¶ 27    But that only gets us so far, because the question is not whether Glenview passed an ordinance—it obviously did—but whether that ordinance actually "decided" anything concrete on the subject of the Hart property's zoning classification. Usually, that part is a no-brainer—the municipality adopts an ordinance granting a zoning request in whole or in part, or it votes that request down on a record vote. The municipal body, in other words, affirmatively acts to either grant or deny a zoning request, which would unquestionably constitute a zoning "decision."

¶ 28    But here, the question of whether Ordinance 2856 actually "decided" anything regarding the Hart property's zoning classification is the subject of heated dispute and an issue this court flagged after the first round of briefing. In the supplemental briefs we ordered, plaintiffs argue that Ordinance 2856 did not, in fact, effect any change whatsoever to the zoning classification of the Hart property. Instead, say plaintiffs, Ordinance 2856 merely kicked the can down the road for future legislative consideration of the Hart property's rezoning.

¶ 29    So while a "decision" to rezone the Hart property must obviously *include* the adoption of an ordinance, we must explicitly add to that something that would normally go left unsaid: that ordinance must actually make some sort of change to the zoning of the Hart property. That, in our view, is the plain, ordinary, and frankly inescapable meaning of the word "decision." To divine a term's ordinary meaning, "it is entirely appropriate to employ a dictionary," which provides a reasonable proxy for how an ordinary person would interpret the law's various words and phrases. *People v. McChriston*, 2014 IL 115310, ¶ 15. Webster's defines "decision" in

7

relevant part as "a determination arrived at after consideration," including "conclusion" as a synonym.[1]

¶ 30    Here, that means that the municipal ordinance must reach some sort of determination or conclusion on the question of the Hart property's zoning to constitute a zoning "decision." Thus, for example, if Ordinance 2856 changed the Hart property's zoning classification, immediately or even conditionally, it would qualify as a "decision" regarding rezoning. Likewise, if the Village definitively *rejected* a request to rezone the Hart Property by a record vote, that, too, would qualify as a "decision" and thus implicate section 11-13-25(a). But if, as plaintiffs claim, Ordinance 2856 effected no change whatsoever to the Hart property's zoning classification and merely delayed resolution for future legislative action by the Village, then by no means could we say that Ordinance 2856 was a zoning "decision" of any kind.

¶ 31                                                            B

¶ 32    So that is where our focus turns, on the language of Ordinance 2856 and a determination of what effect, if any, that ordinance had on the zoning classification of the Hart property.

¶ 33                                                            1

¶ 34    Ordinance 2856 begins, like most municipal ordinances, with a preamble consisting of several "wherefore" clauses. In short form, the preamble explained that (1) "notice of a public hearing" was duly published; (2) this public hearing was held by the Plan Commission of the Village of Glenview, pursuant to the "Glenview Zoning Ordinance;" and (3) after that hearing, the Plain Commission "made a certain recommendation" to the Board of Trustees, on which the Board of Trustees was now prepared to act by adopting Ordinance 2856.

---

[1] Merriam-Webster Dictionary, "Decision," https://www.merriam-webster.com/dictionary/decision (site last visited October 6, 2020).

¶ 35    We mention this at the outset not to comment on the merits of the preamble; we realize that count 1 of the Complaint alleges that the notice of the public hearing was defective, and we make no comment on that claim either way. We note the contents of the preamble simply to demonstrate that Glenview, then as now, provides for a specific formal process for changes to the zoning status of any property, which are found in Chapter 98 of the Glenview Municipal Code, known today as the "Zoning Ordinance," just as the preamble referenced it in 1988.

¶ 36    In Glenview, the process for changing a property's zoning status begins with an "application for amendment" to the zoning laws, which is filed with the office of the director of community development. Glenview Municipal Code, § 98-49(c) (eff. June 15, 2010). Once that application for a zoning amendment is filed, the plan commission holds a public hearing on the application after giving "notice of such hearing *** not more than 30, nor less than 15 days before the hearing ***." *Id*., § 98-49(c). After that hearing, the plan commission submits a report with its findings and recommendations to the Board of Trustees. *Id*., § 98-49(d). Ultimately, the Board of Trustees may "enact the amendment by adoption of an ordinance with or without change, reject the amendment or refer it back to the plan commission for further consideration." *Id*., § 98-49(e).

¶ 37    So the preamble to Ordinance 2856 was reciting its compliance with the formal process called for in the Glenview Municipal Code, the substance of which remains today. That will be important to keep in mind as we consider the substantive language of Ordinance 2856.

¶ 38    Sections 2 and 3 of the ordinance, the rezoning provisions, provide in pertinent part as follows:

"NOW THEREFORE, BE IT ORDAINED by the President and Board of

Trustees of the Village of Glenview, Cook County, Illinois that

9

* * *

Section 2: That property commonly known as [the Hart property] *** be rezoned as follows:

The north portion of the subject parcel, not to exceed 6.2 acres, be rezoned from R-1 Residential District to B-1 General Business District *provided that* the remaining portion of the subject parcel be rezoned from R-1 Residential District to R-4 Residential District to create a buffer zone along the entire southern boundary of the subject parcel *and that the rezoning* from R-1 Residential District to B-1 General Business District and R-4 Residential District *take effect upon notice and application given by the title holder(s) of the subject property to the Board of Trustees*, but in no event shall *said application for rezoning* be accepted by the Board of Trustees until the first to happen of the following events:

a. the demise of either Max A. Hart or Florene S. Hart; or

b. the expiration of five (5) years from March 1, 1988."

Section 3: That the zoning map of the Village of Glenview shall be amended to incorporate the changes set forth herein *at the time that application for said rezoning is accepted by the Board of Trustees* as hereinabove provided." (Emphases added.)

¶ 39    The next provision of the ordinance, Section 4, bestowed benefits on the Hart family. Specifically, "in addition to the rezoning as herein contemplated," the Village would, among other things, run a water service line to the Hart property, without charge to the current owner; allow the current owner to continue using the well water system on the Hart property "until rezoning provided;" allow the current owner to use the driveways on the property "until rezoning as aforedescribed;" and allow the current owner to install a sewer system on the property.

¶ 40    But now our question: When, if ever, is the rezoning "contemplated" by the ordinance to take effect? Since that question was not squarely addressed when the case was first briefed, we invited the parties to file supplemental briefs explaining "when the rezoning language of section 2 is to take effect and when it did take effect, if it has already done so."

¶ 41    Some answers are apparent, others not so much. First, the parties agree—as do we—that the Hart Property was not rezoned immediately upon Ordinance 2856 taking effect. Second, the parties agree—as do we—that when Ordinance 2856 speaks of an "application *** to the Board of Trustees," it is referring to an application for *rezoning*, as indicated by the language that follows the first use of the term "application," once in section 2 (referring to it as "said application for rezoning") and again in section 3 ("application for said rezoning").

¶ 42    And third, the parties agree—as do we—that Ordinance 2856 requires not only that the owner of the Hart Property provide an "application" for rezoning to the Village's Board of Trustees, but also that the Board *accept* that application. That, too, is clear in two portions of the ordinance, section 2 ("in no event shall said application for rezoning be accepted by the Board of Trustees until the first to happen of the following events ***") and section 3 (stating that the Village's zoning map will not be amended to reflect this rezoning until "the time that application for said rezoning is accepted by the Board of Trustees").

¶ 43    To put it together, we agree with the parties that the ordinance says this: The rezoning of the Hart property would not immediately take effect but, rather, would take effect upon the following conditions: (1) the landowner's "notice and application [for rezoning] *** to the Board of Trustees" and (2) that application for rezoning being "accepted by the Board of Trustees."

¶ 44    At first blush, that might seem inconsequential. After all, zoning ordinances often contain conditions that must be satisfied before a zoning change takes effect—for example, the

11

landowner's compliance with local, state, and federal pollution standards. See *Goffinet v. Christian County*, 65 Ill. 2d 40, 47-48 (1976). But Section 2 of Ordinance 2856 is no ordinary conditional zoning provision. The only way we can reasonably construe the "conditions" in Ordinance 2856 is that, before such rezoning can take effect, the landowner must submit to the municipal zoning process all over again and get final approval from the only body that can give such approval, the Board of Trustees. That is so, in our view, because the operative phrases Ordinance 2856 uses to describe the "conditions" on rezoning—"notice" of an "application for rezoning" that must be "accepted by the board of trustees"—all appear either verbatim or nearly so in the Glenview Municipal Code's provisions for the formal rezoning process.

¶ 45   To begin, the "application for rezoning" in Ordinance 2856 bears an uncanny resemblance to the "application for an amendment" to zoning that starts the entire rezoning process in Glenview. See Glenview Municipal Code, § 98-49(c) (eff. June 15, 2010). In the same vein, Section 2 of Ordinance 2856 requires "notice," just as the Illinois and Glenview Municipal Codes require notice of a public hearing on applications for rezoning. See *id.*; 65 ILCS 5/11-13-14 (West 2018).

¶ 46   Likewise, the Glenview Municipal Code specifies that the Board of Trustees may "reject" an application for a zoning amendment or "enact the amendment by adoption of an ordinance." Glenview Municipal Code, § 98-49(e) (eff. June 15, 2010). "Reject" is an antonym of "accept," and in this context, there is little difference between saying "the Board enacted the amendment" to rezone the Hart property, using the Glenview Municipal Code terminology, and "the Board accepted the application for rezoning" the Hart Property, using Ordinance 2856's phraseology. True, the former statement has greater clarity because it explicitly refers to the legal

mechanism of acceptance—enactment of an ordinance—but in our view, that is not enough to alter the meaning of "accept" as used in Sections 2 and 3 of Ordinance 2856.

¶ 47     Simply put, it cannot be an accident that the language in Ordinance 2856 so closely tracks the Village's zoning process from start (application) to finish (legislative approval). It can only mean that the Village wanted to reserve the right to reconsider the idea of rezoning the Hart property at whatever time in the future—ten years, a hundred years, or as it turned out, 31 years later—that the landowner decided to seek a change in the zoning classification.

¶ 48     All of which is to say that the rezoning language in Ordinance 2856 lacked any force or effect.  It punted the question of rezoning. It left the landowner in precisely the same position as any other landowner in Glenview—if you want to "rezone" your property, "apply" for it, we'll give the public "notice" and hold a hearing on your "application for rezoning," and the board of trustees may or may not adopt an ordinance "accepting" your application.

¶ 49                                                    2

¶ 50     The Village says we are reading the ordinance incorrectly. It insists that Ordinance 2856 "decided" to rezone back in 1988, and all the landowner had to do to effectuate this rezoning was file an application for rezoning, as GW Property Group did on May 24, 2019. And voilá, says the Village—at that moment, the rezoning became effective. We cannot agree.

¶ 51     To begin, to accept the Village's argument, we would have to accept that the Village accomplished by indirect and convoluted means something that it could have done simply. If the Village truly intended to resolve the rezoning question in 1988 and leave the rezoning to be triggered at the landowner's whim upon the mere filing of a document, it could have drafted an ordinance requiring the owner of the Hart Property to file a statement of intent to rezone, or something of that nature, indicating as much. There would be no reason for the Village to use a

loaded term like "application," which carries a fixed meaning under its municipal zoning laws. Indeed, if the zoning were pre-approved, for what exactly would the landowner be "applying?" By definition, applications can be accepted or rejected. Why apply for something already approved?

¶ 52   And beyond that, why require that the "application" be filed with the "Board of Trustees?" The Board of Trustees is a legislative body. It doesn't perform ministerial tasks like accepting documents from the public for filing—certainly not in the context of zoning, at least. Legislative bodies routinely *delegate* ministerial functions, like accepting filings, to administrators, with or without giving that administrator discretion. But they do not perform that function themselves. Legislative bodies (particularly in the context of zoning) act only by adopting ordinances. See *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 253 (2003) ("When corporate authorities elect to retain the power to determine and approve zoning variances, *** that power can only be exercised through adoption of ordinances."); *Ashley Libertyville, LLC v. Village of Libertyville*, 378 Ill. App. 3d 661, 664–65 (2008) (same).

¶ 53   The Village would have us believe that Ordinance 2856's reference to the Board of Trustees "accept[ing]" the application for rezoning was tantamount to the Board of Trustees conducting the *pro forma*, ministerial task of receiving a piece of paper over the counter. That is no kind of function we have ever heard a legislative body perform. We find no such provision in the Glenview Municipal Code, nor have we been directed to one. And look no further than what happened in this case: When GW Property Group filed its application for rezoning on May 24, 2019, it didn't file it with the Board of Trustees; it filed it with the *director of community development*, per the Glenview Municipal Code. See Glenview Municipal Code, § 98-49(c) (eff. June 15, 2010).

¶ 54    And we say again: If, in 1988, the Board of Trustees had wanted to transform itself from a deliberative body, which only acts through the adoption of ordinances passed after a public hearing, into the equivalent of a file clerk whose sole duty was to stamp "received" on a document, the Board could have said so with breathtaking ease. That result could have been achieved had Ordinance 2856 contained language making clear that the normal zoning procedures would not apply to the Hart Property—something like a provision stating that the Board of Trustees "shall" accept the application for rezoning, or that the application for rezoning "shall be deemed approved upon filing." Anything of that nature would have easily done the trick.

¶ 55    And last but certainly not least, there is the issue of Ordinance 2856's "notice" precondition. Recall that the rezoning was to take effect upon "notice" as well as an application for rezoning. In advancing its favored interpretation of Ordinance 2856, the Village has no credible answer for what "notice" was contemplated by the ordinance. It offers two attempts. First, it says that the filing of the application for rezoning was, itself, "notice." And second, it posits that "notice" was effected when, a week after GW Property Group filed its application for rezoning, the village clerk sent a mailer to the individual trustees on the board of trustees that gave a "weekly update" on goings-on in the village, including a snippet about the "Hart property."

¶ 56    We emphatically reject both suggestions. The filing of an application for rezoning was not notice to anyone. And a piece of paper handed over a desk from an applicant to a clerk does not magically waft out to the public at large, nor does some mailer put in the mailboxes of individual trustees. The Village is trying to argue here that "notice" only had to go to the body receiving the application—the Board of Trustees—and not the public at large.

15

¶ 57    But "notice" is no casual word in the context of zoning matters. It refers to the constitutional due process rights of property owners to have a say in governmental decisions made about their own or neighboring properties. See *Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2010). Zoning laws tell citizens what they can and cannot do with their property. The idea that the government can change those rules without first giving notice to the interested public is antithetical to a free society and incompatible with the principles of due process, as well as the Illinois and Glenview Municipal Codes. Against that backdrop, and in the absence of a clear and unambiguous legislative intent to the contrary, we cannot fathom that the precondition of "notice" in Ordinance 2856, before the application for rezoning could be accepted by the Board of Trustees, was merely a casual, empty word tossed in by the Board of Trustees, robbed of its ordinary, constitutional significance.

¶ 58    We thus reject the Village's interpretation of Ordinance 2856, as we find it to be an unreasonable, implausible alternative construction.

¶ 59                                        3

¶ 60    Having said all of that, we do not arrive easily at an interpretation of this ordinance that robs its rezoning language of any force or effect. It is the odd ordinance, indeed, that provides for specific rezoning language but then turns around and says, "you can have this rezoning only if you ask for it later, go through the process, and we say yes." We are aware of our duty to avoid interpreting an ordinance in a way that leads to absurd results or that renders blocks of legislative language superfluous. *People v. Hanna*, 207 Ill. 2d 486, 498 (2003); *Palm v. Holocker*, 2018 IL 123152, ¶ 21.

¶ 61    But as we have explained, there is no other reasonable way to read this ordinance. The Village's alternative interpretation falls far short of reasonable. And in any event, we are not so sure how "absurd" the result of our interpretation really is.

¶ 62    As explained above, the village of Glenview was competing for the Hart property (and neighboring property) with the village of Northbrook. In mid-February 1988, the owners of the disputed property chose Glenview over Northbrook and filed petitions for annexation with Glenview (it was only because they did so, and did so before Northbrook completed its involuntary annexation process, that Glenview prevailed). Counsel for the plaintiffs referred to this as a "rush to annexation," and plaintiffs have alleged all along that Glenview cut an improper, *quid pro quo* deal with the Hart family to coax them into agreeing to annexation.

¶ 63    We have no idea if any such deal was cut, but it is part of the Complaint below, which we must accept as true at this stage. And it is not beyond the pale to imagine that Glenview was rushing to put together rezoning language to accommodate the Hart family while, at the same time, protecting the Village's interests by reserving the right to weigh in on the rezoning when and if the owners of the Hart property decided to rezone. After all, villages change all the time. The idea of rezoning the Hart property might look very different in 1988 than in 2019 or, for that matter, 2088. Far from absurd, it would have been *prudent* for the Board of Trustees, in 1988, to reserve for the appropriate day in the future the question of rezoning the Hart property.

¶ 64    We do not claim to know any of these things as fact. There is little doubt that the Village worked out that language with the Hart family, but we do not know who demanded what or exactly how this rezoning language came to be written as it was—poorly drafted, because it was rushed, or strategically drafted by the Village to signal a receptiveness to rezoning while, at the same time, maintaining the Village's ultimate right to reconsider rezoning if and when the

17

landowner decided to seek it. Whether by design or the result of poor, clumsy draftsmanship, Ordinance 2856 unambiguously left the rezoning decision for later, in the hands of the Board of Trustees, should the landowner choose to apply for it.

¶ 65    These canons of statutory construction, such as avoiding superfluity and absurdity, are not unlimited. We will avoid an absurd result if a reasonable alternative interpretation exists. We will try not to interpret an ordinance in a way that renders ineffective a block of language if it can be done reasonably. But we can think of no reasonable way to interpret this ordinance that could make the rezoning language legally enforceable, short of literally deleting provisions and re-writing others and doing great violence to the plain, unambiguous language. There is a limit to the judicial surgery we will perform, lest this ordinance cease to be the Village's and become our own. It is not our job to rescue a circular, contradictory ordinance at all costs, or to give legal effect to rezoning language that may never have been *intended* to have legal effect.

¶ 66    To say nothing of the fact that doing so would be terribly unfair to the citizens of Glenview. Ordinance 2856 has been on the books for 31 years, with language indicating that the only way a rezoning will occur is if the owner of the Hart property applies for a rezoning, and the Village approves it—which is the state of affairs for everyone in Glenview at all times. These residents would justifiably expect that they would have the right to object to any "application for rezoning" if and when it was ever filed, after the promised public "notice," to try to stop the Board of Trustees from "accepting" the application.

¶ 67    Imagine the residents' surprise if an appellate court suddenly swooped in and announced that, yes, the citizens of Glenview were reading the ordinance correctly for the last three decades, but the result seems odd, so the court will try its own hand at legislative draftsmanship, and stay tuned for a new and improved ordinance with a "better" ending. The bad news is you've just lost

18

your legal right to object to a shopping center being built next door to your house, but there's good news, too: the ordinance now makes sense to three people in black robes.

¶ 68     If there were a reasonable interpretation of Ordinance 2856 that gave effect to its rezoning language, we would adopt it. There is not. The rezoning language in Ordinance 2856 had no legal force or effect. It reserved the question for another day, pursuant to the formal process of municipal zoning, from start to finish, prescribed in the Glenview Municipal Code.

¶ 69                                          C

¶ 70     Having reviewed the ordinance, we have little difficulty concluding that, whatever we can say of Ordinance 2856, it was no by no means a "decision" regarding rezoning. The ordinance, at least in terms of rezoning, had no legal force or effect. The ordinance did not deny a rezoning application (assuming one was even made), nor did it approve a zoning request.

¶ 71     We will not stretch the meaning of the phrase "[a]ny decision *** in regard to any petition or application for *** rezoning" (65 ILCS 5/11-13-25(a) (West 2018)) to include the adoption of an ordinance that makes no substantive, even conditional, change to the zoning laws of the municipality, simply because the word "rezoning" appears in the ordinance.

¶ 72     There are admittedly important reasons for a short limitations period to challenge municipal zoning decisions. Municipalities need finality, so that they can make zoning decisions as part of a long-term, comprehensive plan, without having to wonder whether a citizen will file a challenge five or twenty-five years later. More importantly, landowners need to know that if they receive a zoning change and act accordingly (building an addition on their house or constructing a strip mall), they need not look over their shoulder in perpetuity for some lawsuit that will render all of their time and expense for naught.

¶ 73    None of those concerns are present here. Nobody tried to do anything of this nature with the Hart property for 31 years. Nobody has acted in reliance on this (non-)zoning ordinance since 1988, with the possible recent exception of GW Property Group, who apparently purchased the Hart property with the intention of commercial development. And as we have said, anyone paying attention to the zoning map and to the zoning ordinances, particularly Ordinance 2856, would understand that nothing *would* happen unless the owner of the Hart property submitted to the ordinary legislative municipal zoning process—a process in which they could play a part by objecting and presenting evidence and argument at the various hearings before the various boards and commissions that make up the process.

¶ 74    An ordinance that requires a new application for rezoning before it can take effect, and which first requires the approval of that new application by the board of trustees, is not a "decision" to rezone under section 11-13-25 of the Municipal Code. Ordinance 2856 does not fall within that limitations provision. Whatever else may be true of this lawsuit in our light of our ruling, we can safely say it is not time-barred. The judgment of the circuit court is reversed.

¶ 75                                                    II

¶ 76    At plaintiffs' request, we entered an injunction while this case was pending on appeal. We exercised our broad authority under Illinois Supreme Court 366(a)(5) (eff. Feb. 1, 1994), which provides that "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require."

¶ 77    We balanced all the applicable factors, particularly our initial skepticism of the applicability of section 11-13-25 to this lawsuit and, perhaps more significantly, the fact that GW Property Group had begun demolition and construction on the Hart property, including cutting

down trees, that would irreversibly alter the nature of the property before this appeal could be decided. We thus issued the following order:

"The permits issued by the Village for demolition, tree removal, and construction at 2660 Pfingsten Road, Glenview, Illinois 60026 (also known as the "Hart Property") are temporarily invalidated and suspended, and of no force and effect until further order of this Court;

The Village shall take all necessary steps to advise the grantee of these permits that the permits are temporarily invalidated and suspended, and of no force and effect until further order of this Court ***."

¶ 78    In light of our disposition of this appeal, in particular our determination that Ordinance 2856 had no legal effect insofar as a rezoning of the Hart property is concerned, we find ourselves with far more questions than answers about the validity of the Village's actions regarding that property. And it remains true that continued construction and demolition of that property, before the circuit court can get to the bottom of this, will irreversibly transform the character of that property.

¶ 79    So our injunction will remain in place for as long as this Court retains jurisdiction over this cause. Upon issuance of the mandate and remand to the trial court, the trial court shall impose the same or similar order, invalidating and suspending the permits issued by the Village until a final judgment is entered.

¶ 80                                        CONCLUSION

¶ 81    The judgment of the circuit court is reversed. This matter is remanded for further proceedings. This court's injunction will remain in effect until the matter is remanded. Upon remand, the trial court is instructed to impose injunctive relief temporarily invalidating and

suspending the permits for demolition, tree removal, and construction on the Hart property until the court enters its final judgment.

¶ 82    Reversed and remanded with instructions.

---

**No. 1-20-0142**

---

| | |
|---|---|
| **Cite as:** | *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-11017; the Hon. Michael T. Mullen and the Hon. Pamela McClean Meyerson, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Brendan R. Appel and Selwyn M. Skevin, of Law Offices of Brendan R. Appel, LLC, of Northfield, for appellant Nicholas Black.<br><br>No brief filed for other appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Julie A. Tappendorf, Scott A. Puma, and Kurt S. Asprooth, of Ancel Glink, P.C., of Chicago, for appellees. |

---