2026 IL App (1st) 240415-U

SECOND DIVISION
February 10, 2026

No. 1-24-0415

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| RAJA CHELLAPPA[1], | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 23 L 4688 |
| | ) | |
| SUMMERDALE COURT CONDOMINIUM | ) | Honorable |
| ASSOCIATION, | ) | John Curry, |
| | ) | Judge Presiding |
| Defendant-Appellee. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Complaint was properly dismissed. Claims relating to Association bylaws were barred by *res judicata*. Disability-discrimination claims were untimely.

¶ 2    Plaintiff Raja Chellappa is a member of, and owns a unit in the building governed by, defendant Summerdale Court Condominium Association. Since at least 2014, Chellappa has made efforts to force the Association to pay for soundproofing between his unit and the one directly above his. He claims that a "defect" in the soundproofing caused "significant sound pressure," which causes him "intractable, debilitating, and painful migraine symptoms." In May

_____

[1] This case was docketed as *Raja Chellapa v. Summerdale Court Condominium Association*. But the record confirms that appellant's last name is Chellappa. We use the correct spelling.

2023, he filed the complaint before us. He alleged that the Association had contractual and fiduciary duties to repair the space between the units but refused to do so. He also alleged that the Association engaged in disability discrimination in refusing to accommodate his request. The circuit court dismissed the first two counts as barred by *res judicata*. The court dismissed the disability claims for failure to exhaust administrative remedies.

¶ 3     We affirm. The first two counts are barred by *res judicata*. And though we do not agree that the exhaustion doctrine bars the disability counts, we affirm their dismissal as time-barred.

¶ 4                                     BACKGROUND

¶ 5     As we find this matter at the pleading stage, we draw most of our underlying facts from the allegations of the complaint, which we accept as true. *Restore Construction Co., Inc. v. Board of Education of Proviso Township High School District 209*, 2020 IL 125133, ¶ 4; *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 5. We draw information about the previous lawsuits Chellappa filed from the record below.

¶ 6     The history of this case involves three separate lawsuits filed by Chellappa against the Association, all of which stem from the noise coming from the unit above his. In each case, he contends that the Association is legally responsible for ameliorating this problem and/or is guilty of unlawful discrimination against him for failing to do so. He sued in state court in 2014, in federal court in 2016, and again in state court in 2023, that matter before us now.

¶ 7                               I. The 2014 Lawsuit

¶ 8     In 2014, Chellappa sued the Association in Cook County for declaratory judgment, breach of fiduciary duty, and breach of contract, among other claims. He alleged that the Association "refuses to coordinate the acoustical testing of the barrier between the floor and ceiling of the upstairs unit owner and the Plaintiff." In Count I, he sought a declaration that,

under its declarations and bylaws, the Association was required to (1) "adjudicate noise complaints" between the unit owners, (2) "maintain the common elements and in particular the noise barrier qualities of the walls between the units," and (3) "facilitate the acoustical testing between the floors and ceiling of units."

¶ 9 In Count II, Chellappa alleged that the Association owed him a fiduciary duty to "maintain and upkeep the common elements" of the building and "not allow[] a unit occupant to be a nuisance to others." Count III alleged that the declarations and bylaws created an enforceable contract, which the Association breached by refusing to "repair the common floor/ceiling between the units to improve noise resistance," refusing to adjudicate the noise disputes, and refusing "to sue to secure a restraining order" against unit owners that make excessive noise.

¶ 10 The court dismissed the contract count before trial. At trial, the court entered a directed verdict in the Association's favor on the counts of declaratory judgment and breach of fiduciary duty. That final judgment was entered on March 23, 2016. Chellappa did not appeal.

¶ 11                                    II. The 2016 Federal Lawsuit

¶ 12 Six months later, in November 2016, Chellappa filed a federal complaint alleging that the Association and its board members engaged in discrimination based on "race, color, and national origin" in violation of the federal Fair Housing Act, 42 U.S.C. 3601 *et seq.* (FHA). Again, this 2016 federal complaint related to the noise from his upstairs neighbor's unit that began in 2014.

¶ 13 The district court entered summary judgment for the Association based on *res judicata*, ruling that Chellappa had no basis to split his claims. See *Chellappa v. Summerdale Court Condominium Ass'n*, 2017 WL 4570312, *1 (N.D Ill. 2017). The Seventh Circuit affirmed. *Chellappa v. Summerdale Court Condominium Ass'n*, 729 Fed. Appx. 451 (7th Cir. 2018).

¶ 14                                    III. The Suit on Appeal

¶ 15    That brings us to the present, the complaint dismissed by the circuit court below. The background begins on May 24, 2020, when Chellappa made a written request to the Association, explaining that he believed there was a "defect in the interior of the ceiling between his unit and the unit directly above his unit." He claimed that even routine noise such as walking, moving furniture, or "otherwise caus[ing] pressure on the upstairs floor" results in "a substantial, abnormal, and significant sound pressure" in the ceiling. He claims this "sound pressure"—noise—is loud enough to cause "severe" ear pain and trigger migraines.

¶ 16    Chellappa alleged that the ceiling of his unit, and the space between his ceiling and the unit above his, were common elements, controlled by the Association. His May 2020 letter requested that it "take action to determine the nature of the defect." On June 1, 2020, the Association rejected Chellappa's request. According to the complaint, the Association demanded advance payment "as a condition of even creating a maintenance work order." Chellappa alleged that the Association was trying to leverage his pain and suffering "to receive monies from Plaintiff he did not otherwise owe."

¶ 17    In addition to rejecting his request, Chellappa claims he attempted to work out a solution directly with his neighbor to "reach a mutually acceptable compromise." The Association, according to Chellappa, shut this down, too, and allegedly "sent Plaintiff a violation notice stating that Plaintiff was prohibited from discussing the matter with his upstairs neighbor."

¶ 18    On July 13, 2020, Chellappa filed a housing-discrimination complaint with the federal Department of Housing and Urban Development (HUD). HUD referred the complaint to the Illinois Department of Human Rights (IDHR). Chellappa's IDHR complaint alleged that the facts laid out above constituted discrimination and were based, specifically, "because of:

National origin, India[;] Race, Asian." These were the only two bases of discrimination listed in Chellappa's July 2020 administrative discrimination complaint. His IDHR complaint states that the "most recent date on which the alleged discrimination occurred" was "June 1, 2020." The IDHR completed its investigation in March 2021 and issued a Notice of Dismissal for Lack of Substantial Evidence on June 14, 2021.

¶ 19     Nearly two years later, in May 2023, Chellappa filed the subject complaint in the circuit court of Cook County, once again based on the noise problems in his building but this time based on the Association's denials in May and June, 2020. His complaint alleged two common-law claims that closely mirrored his 2014 complaint, plus two claims under the FHA.

¶ 20     In Count I, Chellappa alleges the Association owed him a fiduciary duty that it breached by "refus[ing] to perform or pay for the repairs" to his unit. Count II alleges that "[t]he Declaration of Condominium, Bylaws, and Rules and Regulations are a binding contract" between Chellappa and the Association. Chellappa alleged that the Association breached the contract by "refus[ing] to perform any repairs to the interior of the ceiling" of his unit, "fail[ing] to pay for" any such repairs, and "refus[ing] to allow Plaintiff to perform any repairs to the ceiling" of his unit.

¶ 21     Counts III and IV are again based on the FHA. For the first time, however, Chellappa alleges that he suffers from "migraine headaches," which he alleges "constitute a 'handicap' or 'disability' as that term is defined by 42 U.S.C. 3602(h) of the FHA." (Recall that the HUD complaint he filed made no mention of a disability, alleging discrimination based on race and national origin only.)

¶ 22     Count III alleges that Chellappa's May 2020 request to the Board "legally constituted a request for a reasonable accommodation within the meaning" of the FHA. He then claims that

the Association's denial constituted disability discrimination. Count IV asserts that the Association's refusal to allow him to work things out directly with his neighbor "prohibited him from exercising his protected rights."

¶ 23    The Association moved to dismiss all four counts as barred by *res judicata*. The Association further argued that the discrimination claims, counts III and IV, were barred by the two-year statute of limitations. Finally, the Association argued that Chellappa's discrimination claims should be dismissed because he failed to exhaust his administrative remedies.

¶ 24    The court dismissed counts I and II as barred by *res judicata* and dismissed the discrimination claims for failure to exhaust administrative remedies. This appeal followed.

¶ 25                               ANALYSIS

¶ 26    A motion to dismiss under section 2-619 of the Code of Civil Procedure raises other affirmative matter to defeat a complaint as a matter of law. *Mercado v. S&C Electric Company*, 2025 IL 129526, ¶ 19; 735 ILCS 5/2-619 (West 2022). On review of a section 2-619 dismissal, we accept as true all well-pleaded allegations and draw all reasonable inferences from those facts in the plaintiff's favor. *Id*. We review the court's dismissal on a section 2-619 motion *de novo*. *Mercado*, 2025 IL 129526, ¶ 19. We may affirm a dismissal under section 2-619 on any basis in the record, even if it was not the circuit court's basis, and even if we disagree with the circuit court's basis. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 27                          I. Counts I and II

¶ 28    The circuit court dismissed counts I and II, sounding in breach of fiduciary duty and breach of contract, respectively, based on *res judicata*. Generally, *res judicata* bars a subsequent suit between parties when there has already been a final judgment on the merits by a competent court. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The doctrine

"promote[s] judicial economy by preventing repetitive litigation" and "protect[s] a defendant from the harassment of relitigating essentially the same claim." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21.

¶ 29    Application of *res judicata* requires: (1) a final judgment on the merits, (2) identity of the causes of action, and (3) identity of the parties. *River Park*, 184 Ill. 2d at 302. The bar extends not only to what *was* decided but to "matters that could have been decided in that suit." *Id.*

¶ 30    The first and third prongs of the *res judicata* test are easily met here. His 2014 lawsuit ended in a directed verdict in favor of the Association. See *Cherney v. Fuentes*, 271 Ill. App. 3d 1071, 1078 (1995) (directed verdicts constitute final judgments). And the present lawsuit is against the same principal party, the Association. The fact that individual members of the Board have changed is of no consequence. *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 24 ("the identity of interest, not the nominal identity of the parties, controls.").

¶ 31    The issue joins at prong two, identity of causes of action. When determining whether there is an identity of causes of action between the first and second suits, we look at the facts that give rise to plaintiffs' right to relief, not simply the facts supporting the judgment in the first action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 339 (1996). We ask whether the claims arise from a "single group of operative facts," regardless of the specific theories put forward. *River Park*, 184 Ill. 2d at 311.

¶ 32    Chellappa claims it is illogical that a suit based on the Association's actions in 2020 could be barred by a lawsuit over its actions in 2014. Surely, he says, a plaintiff can sue the same defendant a second time for actions taken by that defendant on a later occasion. His point is not without merit; certainly for the discrimination counts, which allege both a fresh act of alleged discrimination in 2020 *and* a new alleged *basis* for discrimination—Chellappa's disability—the

doctrine of *res judicata* would appear to be an unlikely basis for dismissal. (Which may be why the circuit court relied on *res judicata* to dismiss counts I and II but not counts III or IV.)

¶ 33    But Chellapa's reasoning does not fly as to counts I and II, which were properly dismissed based on *res judicata*. The fiduciary-duty and contract counts in the complaint before us make the same legal and factual arguments as in the 2014 lawsuit.

¶ 34    In both the 2014 suit and the complaint under review, Chellappa alleged that the condominium declarations, bylaws, and rules created (1) a fiduciary duty in the Association to Chellappa and (2) a binding contract between the Association and Chellappa. In each suit, the premise of Chellappa's claims was that the space between his ceiling and his upstairs neighbor's floor was a "common element" and thus the Association's responsibility, not his, to repair.

¶ 35    And while we could nibble at the margins to find differences in the factual settings, in sum and substance, both the 2014 complaint and the one under review allege that the Association breached its contractual and fiduciary duties by refusing to repair (or at least pay for the repair of) the alleged "defect" in the soundproofing between Chellappa's ceiling and his upstairs neighbor's floor.

¶ 36    The circuit court in the 2014 action rejected both claims, one (the contract claim) by a dismissal with prejudice and the other (the fiduciary-duty claim) as a matter of law by directed verdict. We see no material difference between the dispute in 2014 and the complaint before us insofar as counts I and II are concerned. The passage of time is irrelevant to these arguments. If the bylaws did not create a contractual or fiduciary duty to repair the soundproofing in 2014, they did not do so in 2020, either. We are aware of no differences in the bylaws, nor has Chellappa cited any, that would alter the legal analysis one iota.

¶ 37    Chellappa is not entitled to a second bite at the apple, a second judge that might interpret

the bylaws differently or who might view the contract claim more favorably. Forcing the Association to defend this action would be the very definition of "relitigating essentially the same claim." *Richter*, 2016 IL 119518, ¶ 21. The circuit court correctly dismissed these counts.

¶ 38                                    II. Counts III and IV

¶ 39    We turn to Chellappa's disability-discrimination claims under the FHA. Here, for the first time, he claims the disability of migraine headaches. He alleges the Association discriminated against him by refusing to accommodate his disability (Count III) and, in refusing to let him confer with his upstairs neighbor, prohibited him from exercising his rights (Count IV).

¶ 40    The Association asserted three bases below to dismiss these two counts: (1) they are barred by *res judicata*; (2) they are barred for Chellappa's failure to exhaust administrative remedies; and (3) they are barred by the applicable statute of limitations. We may affirm the circuit court's judgment on any of these grounds. *Raintree Homes*, 209 Ill. 2d at 261. We have already briefly explained that the application of *res judicata* to the disability-discrimination counts strikes us a shaky proposition.

¶ 41    So too for the basis on which the circuit court relied, Chellapa's failure to exhaust administrative remedies. Suffice it to say that Chellappa has cited a litany of case law, plus the language of the FHA itself, indicating that the exhaustion doctrine is not applicable to FHA claims. See 42 U.S.C. § 3613(a)(2) ("An aggrieved person may commence a civil action under this subsection whether or not a [HUD] complaint has been filed *** and without regard to the status of any such complaint"); *Novak v. State Parkway Condominium Ass'n*, 141 F. Supp. 3d 901, 908 n.4 (N.D. Ill. 2015) ("There is no doubt that fair-housing plaintiffs can elect to seek redress either in court *or* through an administrative charge." (emphasis in original)).

¶ 42    The Association claims the exhaustion provisions of state law remain binding and notes

that Chellappa has cited no Illinois decision on point. See, *e.g.*, *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004) (noting that Illinois case law on this topic "has been consistent for certain types of claims, but rather confusing for others"). But because we have a clear and uncontroversial basis on which to affirm, we will bypass the exhaustion question.

¶ 43    Instead, we turn to whether Chellappa's suit is barred by the statute of limitations. Though we instantly flagged it in our review of the record, the Association did not raise it as a basis for affirmance in its appellate brief (quite likely because it was not the circuit court's reason). So out of an abundance of caution, we ordered additional briefing to ensure that each party had a fair opportunity to address this issue. That briefing confirms, beyond any question, even giving Chellappa a tolling period to which he is likely not entitled, that his lawsuit was filed a day after the applicable limitations period expired.

¶ 44    The parties agree that the relevant limitations provision is found in the FHA, which provides that a private civil action may commence "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A) (West 2020). We agree that this limitations period governs, as "federal limitations periods generally are considered components of federal law that must be followed when entertaining federal causes of action." *Wellington Homes, Inc. v. West Dundee China Palace Restaurant, Inc.*, 2013 IL App (2d) 120740, ¶ 22. So we are dealing here with a two-year limitations provision.

¶ 45    We know that Chellappa filed the lawsuit at issue on May 5, 2023. As for the date of "occurrence" of the alleged discrimination, in his IDHR complaint, Chellappa identified the "most recent date on which the alleged discrimination occurred" as June 1, 2020. We will use that as the "occurrence" date, the latest possible date, which obviously favors Chellappa when we compute the limitations period.

¶ 46    Obviously, May 5, 2023 is more than two years after June 1, 2020. But the FHA's limitations statute includes a tolling provision when the plaintiff seeks administrative relief before filing suit: "Such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B).

¶ 47    As noted above, Chellappa initiated an "administrative proceeding" when he filed his HUD complaint on July 13, 2020. Recall that HUD transferred the matter to the IDHR. The IDHR issued its "Notice of Dismissal for Lack of Substantial Evidence" on June 14, 2021. We will assume for the moment, then, that Chellappa was entitled to a tolling during this entire period of time, starting on and including July 13, 2020, through and including June 14, 2021.

¶ 48    To sum it up: The latest date of the (alleged) discrimination was June 1, 2020. Chellappa filed his administrative claim with HUD about six weeks later, on July 13, 2020. The IDHR denied his claim on June 14, 2021. And Chellappa filed this lawsuit on May 5, 2023.

¶ 49    The clock started running on June 2, 2020, as we count the days "after" the date the discrimination occurred. *Id.*; see Fed. R. Civ. Pro. 6 (a)(1)(A) (when computing time deadline in statute, "exclude the day of the event that triggers the period"); 5 ILCS 70/1.11 (West 2024) (in counting time where act is to be performed within particular period, first day is excluded).

¶ 50    Now it's just a matter of math. If Day 1 of the limitations period is June 2, 2020, we count that day all the way to and including July 12, 2020, the last day before Chellappa filed his HUD complaint. That gives us 41 days.

¶ 51    We do not count July 13, 2020, the day Chellappa filed the HUD complaint, or any other day through and including June 14, 2021, the day the IDHR denied his complaint.

¶ 52    The clock starts up again on June 15, 2021, the forty-second day of the limitations period.

From that day onward, to and including May 5, 2023, gives us a total of 690 days.

¶ 53    The sum of 41 and 690 is 731 days. A year is 365 days, so two years is 730 days. Meaning Chellappa filed suit two years and one day after the date of the alleged discrimination—one day late. His lawsuit was untimely; it was due on May 4, 2023. The circuit court could have dismissed the complaint on this ground. We uphold the dismissal on this basis.

¶ 54    In its brief, the Association calculated 732 days, one more than we did, which would make Chellappa's suit two days late. But the Association did not credit Chellappa for the day he filed the HUD suit. That cannot be correct. The day Chellappa filed the HUD suit must be credited as a day of tolling as much as any other day that the administrative complaint remained pending.

¶ 55    A few critical notes here. The day Chellappa's filing was due—May 4, 2023—was a Thursday, so no weekend or holiday extended the filing deadline. See Fed. R. Civ. Pro. 6(a)(2)(C) (if period ends on weekend or holiday, period runs until next day that is not weekend or holiday); 5 ILCS 70/1.11 (West 2020) (holidays and weekends excluded from deadlines).

¶ 56    For what it's worth, no leap year intervened, either, to make a "year" 366 days instead of 365. The most recent leap years were 2020 and 2024. The first 41 days of the limitations period, before tolling, were in June and July 2020; it obviously makes no difference how many days were in the month of February that year. The clock restarted, after the tolling, in 2021, and his deadline was in the year 2023, so that second window was unaffected by a leap year. (We are not saying the presence of a leap year would make a difference; we only note that it is not necessary to concern ourselves one way or the other.)

¶ 57    As we briefly referenced above, though we have credited every day that Chellappa's administrative complaint was pending, including the day he filed the claim through and including

the day it was denied, we have serious doubt that he was entitled to any tolling at all. We say this because his administrative complaint alleged discrimination based on race and national origin—not a word about a disability. But the lawsuit he filed did not mention discrimination based on race or national origin and focused only on the failure to accommodate his *disability*.

¶ 58      It does not appear that the limitations period in the FHA permits tolling for a lawsuit filed for a different act of discrimination than the one that was the subject of the administrative action. Again: "Such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon *such* discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B) (emphasis added). The word "such" suggests that the discriminatory housing practice alleged in the lawsuit must mirror that alleged in the administrative action. Here, it did not. It makes little sense to pause a potential claim that the Association failed to reasonably accommodate Chellappa's disability so the parties could administratively litigate whether the Association held animus toward Chellappa based on his race or national origin.

¶ 59      When we ordered supplemental briefing on the limitations issue, we asked the parties to address this question, too. Each party essentially skirted it. Our own research unearthed one decision that declined to toll the two-year limitations period as to a particular defendant who was not named in the administrative proceeding. See *Sentell v. RPM Management Co., Inc.*, 653 F. Supp. 2d 917, 922 (E.D. Ark. 2009) (because defendant "was not put on notice of the administrative proceeding, the statutory tolling provision in [FHA] is not effective in tolling" two-year limitations provision as to that defendant). Likewise, here, one could argue that the Association was not put on notice of a claim of *disability* discrimination by a HUD/IDHR complaint that alleged only discrimination based on race and national origin.

¶ 60    In other words, it is quite likely that Chellappa's lawsuit was not one day late but more like eleven months late. But because Chellappa's suit is barred even if we grant him the tolling, we need not decide this issue. We simply note that Chellappa's suit was untimely even under the most generous calculation we could make.

¶ 61    Chellappa neither disputes our math nor provides any of his own. His argument requires no calculator. He relies on the doctrine of a continuing violation, the notion that the discrimination he suffered was "a 'persistent process of illegal discrimination' rather than a discrete, completed discriminatory act." *Access Living Metropolitan of Chicago, Inc. v. City of Chicago*, 752 F. Supp. 3d 922, 932 (N.D. Ill. 2024) (quoting *Tyus v. Urban Search Management*, 102 F. 3d 256, 265 (7th Cir. 1996)).

¶ 62     If a plaintiff claiming an FHA violation "challenges not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). The FHA's limitation provision was amended to comply with *Havens Realty*, now requiring the commencement of a private action "not later than 2 years after the occurrence *or the termination* of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A) (West 2020) (emphasis added).

¶ 63    For example, a "continuing pattern, practice, and policy of unlawful racial steering" that is "based not solely on isolated incidents involving the two [plaintiffs], but a continuing violation manifested in a number of incidents" of steering racial minorities from the defendant's apartment complex, was a continuing violation. *Havens Realty*, 455 U.S. at 380. A bank's pattern and practice of providing unfavorable credit terms to minorities, not only between 2004 through 2008 but continuing into the present time, was a continuing violation. *County of Cook v. Bank of*

*America Corp.*, 181 F. Supp. 3d 513, 520 (N.D. Ill. 2015).

¶ 64    We have nothing like that here. The complaint, in its two counts, identifies two discrete acts by the Association: (1) refusing to fix or pay for the fix of the soundproofing problem and thus refusing to accommodate Chellappa's disability (Count III) and (2) "prohibiting Chellappa from communicating with his upstairs neighbor" and thus preventing him from exercising his lawful rights (Count IV).

¶ 65    To be sure, Chellappa alleges that the *effects* of these actions continue to plague him. That, in fact, is his *only* argument for application of the continuing-violation doctrine. He says that

> "Even if the Court below awarded Plaintiff money damages for the injuries he is being caused by sound pressure waves, those injuries will immediately recur as soon as he returns home from the courthouse. The injuries to Plaintiff's health, moreover, are cumulative, and worsening with time, the very essence of a continuing harm. This is a continuing wrong with escalating damages, because each time Plaintiff experiences a sound pressure wave, his pain worsens. Each time his upstairs neighbors step on the defective ceiling separating their apartment from Plaintiffs' home, Plaintiffs' health deteriorates further. In short, Plaintiff is suffering a cumulative injury which continues through to the present day."

¶ 66    Chellappa's claims do not amount to a continuing violation. He complains of "continuing *harm*" and "cumulative *injury*," but that is very different than a continuing *violation*.

¶ 67    It is well settled that "the continual ill-effects arising from a single (or multiple) *past* violation[s]" does not transform discrete acts of discrimination into a continuing violation. *Access Living*, 752 F. Supp. 3d at 933 (emphasis in original). " 'The idea that failing to reverse

the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either.' " *Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 865 (N.D. Ill. 2013) (quoting *Bridewell v. Eberle,* 730 F.3d 672, 678 (7th Cir. 2013)). The " 'enduring consequences' " of a discrete act " 'are not independently wrongful.' " *Id*. (quoting *United States v. Midwest Generation, LLC,* 720 F.3d 644, 648 (7th Cir. 2013)).

¶ 68    If the lingering effects of a discrete act of discrimination transformed the act into a continuing violation, then virtually every act of discrimination would be a "continuing violation," for nearly all such acts will have a negative impact on the plaintiff beyond the date of the discriminatory act itself. That is not the law. As one court noted in discussing the continuing-violation doctrine in federal law, "[t]ypically, courts treat the failure to accommodate an employee's disability as a discrete discriminatory act that triggers the *** limitations period." *Dooley v. Abbott Laboratories*, 07 C 7249, 2009 WL 1033600, at *6 (N.D. Ill. 2009).

¶ 69    In that decision, an employer's refusal to grant an employee a flexible start time to accommodate his narcolepsy disability was a discrete act, not a continuing violation, even though the employee remained aggrieved every day thereafter. *Dooley v. Abbott Laboratories*, 07 C 7249, 2009 WL 1033600, at *6 (N.D. Ill. 2009). The fact that the employer did so twice, once in September 2004 and again in March 2006, did not convert those acts into a continuous violation, either—they were two discrete acts, each redressable separately. *Id*. at ** 6-7.

¶ 70    The failure to offer a professor tenure, allegedly based on her gender, was a discrete act, despite the fact that she stayed on for her one remaining year of non-tenured employment, as "[t]ime starts to run with 'the *discriminatory act,* not the point at which the *consequences* of the act become painful.' " *Lever v. Northwestern University*, 979 F.2d 552, 553 (7th Cir. 1992) (emphases in original) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)).

¶ 71    A state agency's demotion of an employee, allegedly failing to accommodate his disability (diminished vision based on a tumor), was a discrete act that triggered the running of the limitations period, despite the fact that "the effects of this action continued onward into the statute of limitations period." *Kielbasa v. Illinois E.P.A.*, 02 C 4233, 2003 WL 880995, at *4 (N.D. Ill. 2003).

¶ 72    The fact that the Association's discrete acts alleged in the complaint continue to negatively affect Chellappa's physical and mental health unfortunately has no impact on the running of the limitations period. As Chellappa's lawsuit was filed a day after the expiration of the limitations period, even giving him every benefit of the doubt, his suit is time-barred. We affirm the dismissal of counts III and IV, albeit on different grounds.

¶ 73                                    CONCLUSION

¶ 74    The judgment of the circuit court is affirmed.

¶ 75    Affirmed.